# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **KRAFT FOODS GROUP, INC.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) No. 14 C 9419 |
| v. | ) |
| | ) Judge Jorge L. Alonso |
| **SUNOPTA INGREDIENTS, INC.,** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Kraft Foods Group, Inc. ("Kraft") purchased a dried buttermilk product from defendant SunOpta Ingredients, Inc. ("SunOpta") or SunOpta's predecessor for over two decades. Kraft learned in 2013 that the dried buttermilk product it was purchasing was not pure buttermilk powder but a blend of buttermilk powder and other ingredients including whey powder, whey protein concentrate, and dried milk. Kraft subsequently brought this action against SunOpta for breach of contract, common-law fraud, and violation of the Illinois Consumer Fraud Act ("ICFA"), 815 ILCS 505/2. SunOpta moves to dismiss Counts II and III of Kraft's amended complaint for failure to state a claim. For the following reasons, the motion is granted.

## I.   BACKGROUND

For over twenty years, Kraft purchased from SunOpta or a SunOpta predecessor a high-heat spray-dried buttermilk product, which it used as an ingredient in Kraft products such as cheese powder. (Am. Compl. ¶ 6, ECF No. 34.) Kraft alleges that, throughout this twenty-year period, Kraft understood the buttermilk product to be composed of pure, unadulterated buttermilk. (*Id.*, ¶¶ 1, 14-15.)

Kraft periodically requires ingredient suppliers to verify that the ingredients supplied are in compliance with Kraft's specifications. (*Id.* ¶ 19.) In 1996, Kraft sent a Raw Material Information Sheet form to Northern Food and Dairy, Inc. ("Northern Food"), a Kraft supplier that was subsequently acquired by SunOpta. (*Id.* ¶¶ 20-21.) In the 1996 Raw Material Information Sheet, which Northern Food filled out in handwriting and returned to Kraft, Northern Food stated that the buttermilk product's only ingredient was "Buttermilk — 100%." (*Id.* ¶ 22; *id.*, Ex. 4, at 3.) Where the form asked for a "physical description" of the product, Northern Food offered the following: "Buttermilk product in liquid form is brought into the plant to be spray dried." (*Id.*, Ex. 4, at 4.) The form is not signed, but it lists a "contact name" of "Mary," without giving a last name, and a phone number. (*Id.*, Ex. 4, at 7.)

In June 2012, Kraft notified SunOpta that it wished to change the specifications for the buttermilk product, increasing the protein level from the current 20-28% to a minimum of 28%. (*Id.* ¶ 26.) SunOpta acknowledged that the change in protein level would "affect the cost of the product." (*Id.* ¶ 27.)

In March 2013, Kraft "learned from SunOpta" (Kraft does not elaborate on how) that the buttermilk product it was buying from SunOpta was not 100% buttermilk, but a blend of buttermilk powder, whey powder, whey protein concentrate and nonfat dried milk. (*Id.* ¶¶ 14-15.)

Kraft subsequently brought this action. On August 10, 2015, this Court dismissed Kraft's fraud claims without prejudice for failure to state a claim. (Memo. Op. & Order, ECF No. 27.) Kraft filed an amended complaint on September 29, 2015, again alleging breach of contract as well as common-law fraud (Count II) and violation of the ICFA, 815 ILCS 505/2 (Count III). SunOpta has moved to dismiss Counts II and III.

## II. LEGAL STANDARDS

"A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (ellipsis omitted).

Under federal notice-pleading standards, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Stated differently, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "In reviewing the sufficiency of a complaint under the plausibility standard, [courts must] accept the well-pleaded facts in the complaint as true, but [they] 'need[ ] not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665–66 (7th Cir. 2013) (quoting *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009)).

Additionally, a plaintiff alleging fraud must "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Although fraudulent or deceptive intent "may be alleged generally," Rule 9(b) requires Kraft to describe the "circumstances" of the alleged fraud with "particularity" by including such information as the "the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by

which the misrepresentation was communicated to the plaintiff," *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 668 (7th Cir. 2008), or, to put it differently, by providing the "who, what, where, when and how" of the alleged misrepresentations. *See Bank of Am., Nat. Ass'n, v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013).

SunOpta moves to dismiss Kraft's claims of common-law fraud (Count II) and violation of the ICFA by engaging in "deceptive acts and practices" (Count III). The elements of these claims are as follows:

> To state a claim under the ICFA, a plaintiff must allege "(1) a deceptive or unfair act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) the unfair or deceptive practice occurred during a course of conduct involving trade or commerce." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 934 (7th Cir. 2010) (citing *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960 (Ill. 2002)). To state a claim of common law fraud, a plaintiff must allege "(1) a false statement or omission of material fact; (2) knowledge or belief of the falsity by the party making it; (3) intention to induce the other party to act; (4) action by the other party in reliance on the truth of the statements; and (5) damage to the other party resulting from such reliance." *Weidner v. Karlin,* 932 N.E.2d 602, 605 (Ill. App. Ct. 2010).

*Miner v. Gov't Payment Serv., Inc.*, No. 1:14-CV-07474, 2015 WL 3528243, at *3 (N.D. Ill. June 4, 2015).

Both the common-law fraud claim and the ICFA claim are based on alleged misrepresentations or misleading omissions, and both claims therefore must meet the heightened pleading standard of Rule 9(b) with respect to the circumstances constituting fraud. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 446-47 (7th Cir. 2011).

### III. FRAUD CLAIM (COUNT II)

This Court ruled that Kraft did not meet its pleading burden in the original version of its complaint, and Kraft has added very little to its amended complaint in the way of additional factual allegations to support its fraud claims. The only substantial allegations it adds are those

4

concerning the 1996 Raw Material Information Sheet, but the Court was already aware of the Raw Material Information Sheet because Kraft discussed it in its brief in opposition to SunOpta's motion to dismiss the original complaint, and the Court took it into account in making its earlier ruling. *See Geinosky v. City of Chi.*, 675 F.3d 743, 745 n. 1 (7th Cir. 2012) (plaintiff opposing a motion to dismiss may elaborate on factual allegations provided the new elaborations are consistent with the pleadings).

As the Court previously stated, Kraft must plead enough factual matter to allow the Court to infer that it is plausible, not merely possible, that SunOpta intended to deceive Kraft and induce Kraft to act based on the deception. *Pirelli*, 631 F.3d at 443; *see also Int'l Star Registry of Ill. v. ABC Radio Network, Inc.*, 451 F. Supp. 2d 982, 988-89 (N.D. Ill. 2006). But based on the allegations Kraft has made and exhibits it has submitted, the Court cannot infer "more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679; *see Twombly*, 550 U.S. at 554-55; *Brooks v. Ross*, 578 F.3d 574, 581-82 (7th Cir. 2009).

Kraft pleads no facts with particularity concerning the initiation of the business relationship between Kraft and SunOpta's predecessor, Northern Food, or what its initial specifications to Northern Food were. Kraft's fraud claim rests principally on two alleged misrepresentations: the 1996 Raw Material Information Sheet, and SunOpta's 2012 response to Kraft's request to change the protein content of the buttermilk product it was buying, in which SunOpta informed Kraft that changing the protein content would "affect the cost of the product," without providing any further details. These allegations are insufficient to state a claim of fraud.

The 1996 Raw Material Information Sheet lists a contact person's first name and phone number, but it is not signed, and it was issued not by SunOpta but by Northern Food, an entity that SunOpta later acquired. By 1996, Northern Food had already been supplying Kraft with

5

buttermilk product for approximately three years, and Kraft makes only sparse, conclusory allegations as to how it relied on this alleged misrepresentation in 1996. The Court doubts whether offering this isolated document of uncertain origin and effect amounts to pleading the "circumstances constituting fraud" with "particularity." *See Windy City*, 536 F.3d at 669 (plaintiffs pleaded misrepresentation with particularity but failed to "describe [defendant's] connection to any fraud with the particularity required by Rule 9(b)"); *see also Marrero v. Fraternal Order of Police Chi. Lodge No. 7*, No. 12-CV-5280, 2013 WL 3224450, at *3 (N.D. Ill. June 25, 2013) (fraud not pleaded with particularity where claimant did not identify to whom misrepresentations were made or which individuals heard or witnessed them); *Richmond v. Advanced Pain Consultants, S.C.*, No. 15 C 479, 2015 WL 7710371, at *3 (N.D. Ill. Nov. 30, 2015) (party pleading fraud "must at least plead with sufficient particularity facts establishing . . . who made the misrepresentations and to whom they were made").

But even if the Court assumes that the particularity standard is met, the document does not support a plausible inference of a twenty-year fraudulent scheme. This 1996 document is remote in time from SunOpta's 2013 admission that its buttermilk product is not 100% buttermilk, and it was issued by a different business entity. The 1996 Raw Material Information Sheet, standing alone, is "just as much in line" with alternative explanations, such as an honest mistake, misunderstanding or even truthfulness (perhaps the product *was* composed of 100% buttermilk way back in 1996, when it was produced by Northern Food, rather than SunOpta), as with fraud, *see Brooks v. Ross*, 578 F.3d 574, 581-82 (7th Cir. 2009) (citing *Twombly*, 550 U.S. at 554).

As for the alleged misrepresentation in June 2012, SunOpta simply responded to Kraft's updated specification by informing Kraft that enhancing the protein content as Kraft requested

6

would increase the cost of the product. Kraft's initial message to SunOpta about the updated specification did not ask SunOpta to identify the composition of the product (Am. Compl., Ex. 5, at 7-8), so there is no reason to read any fraudulent intent into its omission to do so in its June 2012 response. Again, SunOpta's response is just as much in line with the alternative explanation that it had a different understanding of the composition of the product, which it believed Kraft shared.

The Seventh Circuit has explained that "Rule 9(b) does not require pleading state of mind, but [the] complaint must afford some basis for believing that plaintiffs can prove scienter." *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 508 (7th Cir. 2007) (citing *Tricont'l Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 833, 841-42 (7th Cir. 2007). Taking all the allegations into account and drawing all reasonable inferences in Kraft's favor, there is nothing to shed light on why SunOpta would defraud Kraft rather than simply supply a product conforming to its specifications and set the price accordingly, as it did in 2012 when Kraft requested to change the protein content. *See Borsellino*, 477 F.3d at 508 (fraudulent intent not adequately pleaded because allegations "did not shed any light on the fundamental implausibility of the fraud").

Kraft claims that an inference of fraudulent intent is reasonable because federal regulations defined the term "dry buttermilk product" as 100% pure buttermilk, without any "nonfat dry milk, dry whey, or products other than buttermilk," so SunOpta's use of the term "buttermilk product" to identify its product was misleading. (Am. Compl. ¶¶ 13, 16.) SunOpta argues that these regulations concern voluntary requirements for certification by the USDA as "standard" or "extra"-grade "dry buttermilk product"; they do not impose a blanket prohibition on using the term "buttermilk product" to refer to a blended product such as the one SunOpta

sold to Kraft. Kraft does not seriously argue otherwise; it argues only that based on the regulation, SunOpta should have been aware that others in the industry would understand "buttermilk product" to be composed of pure buttermilk. But it requires quite an inferential leap to conclude, based on SunOpta's mere use of the term "buttermilk product," that SunOpta intended to defraud Kraft by selling an inferior blended buttermilk product, especially considering that the term "buttermilk product" on its face seems to refer to a product composed of more than just pure buttermilk, because otherwise the word "product" is superfluous. In light of all the other facts and circumstances, no such inference is plausible.

Importantly, Kraft's allegations as to the price it paid SunOpta for the blended product tend to undermine its allegations of a fraudulent scheme. The sample purchase order that Kraft attached to its complaint shows that Kraft was paying SunOpta 91% of the market price of dry buttermilk. (Am. Compl., Ex. 1, at 1.) The gist of Kraft's claim is that it believed it was buying 100% pure buttermilk rather than a cheaper blended product, and it would not have bought the blended product if it had known its true composition. But the below-market price SunOpta was charging, not to mention the fact that it was SunOpta itself that disclosed the composition of the product, undermine any inference that SunOpta intentionally sought to pass its buttermilk product off as 100% pure buttermilk. Kraft never makes any serious attempt, either in its complaint or its brief, to explain the incongruity between its position that SunOpta intended to pass off a blended product as pure buttermilk and the fact that SunOpta sold the blended product for less than the market price of pure buttermilk.

Additionally, although Kraft alleges that the blended buttermilk product it received was inferior to the pure dried buttermilk it believed it was buying, Kraft paid only 91% of the market price for pure dried buttermilk, and Kraft has not alleged that the blended buttermilk product it

8

received was worth less than that. Kraft has not pleaded with particularity that it was actually damaged. *See Swanson v. Citibank, N.A.*, 614 F.3d 400, 406 (7th Cir. 2010); *Elias v. Stewart Title of Ill.*, No. 09 C 6773, 2010 WL 4482102, at *5 (N.D. Ill. Nov. 1, 2010).

Kraft has not stated a plausible claim, based on factual circumstances pleaded with particularity, of common-law fraud against SunOpta. SunOpta's motion to dismiss is granted as to Count II. Although SunOpta asks for dismissal with prejudice, the dismissal will be without prejudice. It appears unlikely that Kraft will be able to state a fraud claim against SunOpta, having failed twice, but at this point the Court is unable to say with certainty that any amendment would be futile.

## IV.   ICFA CLAIM (COUNT III)

Kraft's ICFA claim must meet the same heightened pleading standard, but the ICFA "was designed to provide broader protection for consumers than the common law action of fraud[,] and thus a plaintiff is not required to prove every element of common law fraud in order to recover." *Elson v. State Farm Fire & Cas. Co.*, 691 N.E.2d 807, 816 (Ill. App. Ct. 1998). "Unlike common law fraud, 'the Consumer Fraud Act does not require actual reliance, an untrue statement regarding a material fact, or knowledge or belief by the party making the statement that the statement was untrue.'" *Anderson v. Klasek*, 913 N.E.2d 615, 618 (Ill. App. Ct. 2009) (quoting *Martin v. Heinold Commodities, Inc.*, 643 N.E.2d 734, 754 (Ill. 1994)). The Court's analysis of whether Kraft meets its pleading burden on the common-law fraud claim may not apply to Kraft's ICFA claim, which is composed of fewer elements.

However, the Court need not analyze whether Kraft meets its pleading burden on the ICFA claim if Kraft lacks standing under the ICFA. The ICFA applies only to "consumers," and the ICFA defines a "consumer" as "any person who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business but for his use or that of

9

a member of his household." 815 ILCS 505/1. SunOpta contends that Kraft is not a consumer, nor was it acting as a consumer within the meaning of the ICFA when it purchased buttermilk product for incorporation into the products it sold. *See Ivanhoe Fin., Inc. v. Mortgage Essentials, Inc.*, No. 03 C 6887, 2004 WL 856591, at *2 (N.D. Ill. Apr. 21, 2004) (business entity that "purchas[es] component parts for incorporation into a final product" is not a "consumer" with standing to bring a claim against the component seller under the ICFA).

Kraft responds that business entities have standing to bring claims under the ICFA if they satisfy the "consumer nexus test" by showing that "the alleged conduct involves trade practices addressed to the market generally or otherwise implicates consumer protection concerns." *Brody v. Finch Univ. of Health Scis./The Chicago Med. Sch.*, 698 N.E.2d 257, 268-69 (Ill. App. Ct. 1998). Neither the ICFA nor the Illinois Supreme Court has defined "consumer protection concerns," but courts have held that "consumer protection concerns" are implicated where, for example, the defendant's conduct

> involves sharp practices designed to mislead consumers about a competitor, *see Downers Grove Volkswagen, Inc. v. Wigglesworth Imports, Inc.,* 546 N.E.2d 33, 39 (Ill. App. Ct. 1989) (finding standing for plaintiff whose competitor distributed 15,000 disparaging brochures to consumers), or public health, safety or welfare issues, *see Stickle Enters., Ltd. v. CPC Int'l., Inc.,* No. 96 C 3123, 1997 WL 767301, at [*]4 (N.D. Ill. Dec. 3, 1997) (allowing plaintiff to challenge competitor's deceptive actions to promote sale of contaminated animal feed).

*Simon v. Ottman*, No. 98 C 1759, 2001 WL 1035719, at *8 (N.D. Ill. Aug. 31, 2001) (internal citations altered).

Kraft alleges that it paid SunOpta a higher price for its buttermilk blend than it would have but for the alleged deceptive conduct, resulting in a higher price to consumers, and it argues that these allegations are sufficient to implicate "consumer protection concerns" because SunOpta's conduct affected "consumer economic interests." (Mem. in Opp., at 10-11, ECF No.

46.) Further, Kraft argues that SunOpta's conduct raises "public health, safety or welfare issues," *Simon*, 2001 WL 1035719, at *8, because it impaired consumers' interest in the accurate representation and labeling of food products.

### A. "Consumer Economic Interests"

Courts have generally rejected the argument that deceptive conduct a commercial party directs at another commercial party implicates "consumer protection concerns" merely because consumers may ultimately use the parties' products. *See Tile Unlimited, Inc. v. Blanke Corp.*, 788 F. Supp. 2d 734, 740 (N.D. Ill. 2011) ("This argument has been soundly, repeatedly, and correctly rejected."). As SunOpta correctly explains, none of the cases Kraft cites in support of its argument that SunOpta's conduct affected "consumer economic interests" are analogous to this case. In all of them, the plaintiffs were harmed by the defendants' deceptive practices while acting as consumers, in the sense that they were more like end-users of the defendants' products or services than commercial purchasers of components or ingredients that they intended to incorporate into their own products, *see Bank One Milwaukee v. Sanchez*, 783 N.E.2d 217, 220 (Ill. App. Ct. 2003), *Brody v. Finch Univ. of Health Scis./The Chicago Med. Sch.*, 698 N.E.2d 257, 269 (Ill. App. Ct. 1998), *Peter J. Hartmann Co. v. Capital Bank & Trust Co.*, 694 N.E.2d 1108, 1117 (Ill. App. Ct. 1998), *U.S. ex rel. Pileco, Inc. v. Slurry Sys., Inc.*, 872 F. Supp. 2d 710, 729 (N.D. Ill. 2012), or the plaintiffs accused the defendants of making misrepresentations directly to consumers with the intent to steer consumers away from the plaintiffs' businesses, *see Empire Home Servs., Inc. v. Carpet Am., Inc.*, 653 N.E.2d 852, 854 (Ill. App. Ct. 1995), *Gadson v. Newman*, 807 F. Supp. 1412, 1421 (C.D. Ill. 1992), *Downers Grove Volkswagen*, 546 N.E.2d at 39. This case is farther removed from consumers, and therefore from "consumer protection concerns," because Kraft's claim is not that Kraft was availing itself of SunOpta's products as a consumer would or that SunOpta targeted consumers directly with its deceptive practices; rather,

11

SunOpta's alleged deceptive conduct occurred in the context of its commercial relationship with Kraft as a supplier of ingredients for the food products Kraft produced and sold. The authority plaintiff has cited is inapposite and therefore does not support its argument that there is a sufficient "consumer nexus" in this case based on "consumer economic interests."

Additionally, even if the effect on consumers in this case were the sort that could satisfy the consumer nexus test, Kraft has not alleged with particularity that consumers actually paid higher prices due to SunOpta's deceptive conduct. Indeed, as described above in Part III of this order, Kraft has not even alleged with particularity that it overpaid for the buttermilk product it purchased, and Kraft can hardly have passed on inflated costs to consumers if it did not pay inflated costs in the first place. To be sure, Kraft is correct that it need not allege injury to consumers to state a claim under the ICFA, *ABN AMRO, Inc. v. Capital Int'l Ltd.*, 595 F. Supp. 2d 805, 849 (N.D. Ill. 2008), but it must plead a consumer nexus somehow, and it fails to do so under its "consumer economic interests" theory.

### B. Public Health, Safety or Welfare Issues

Courts have only found the consumer nexus test met on the ground that the alleged deceptive conduct implicated "public health, safety or welfare issues" in cases in which the deceptive conduct represented a genuine risk of harm to consumers. *See YCB Int'l, Inc. v. UCF Trading Co., Ltd.*, No. 09 C 7221, 2010 WL 4781871, at *5 (N.D. Ill. Nov. 10, 2010) (allowing plaintiff to bring ICFA claim against defendant for delivery of counterfeit and "inferior" ball bearings, which were subsequently incorporated into vehicles and sold to consumers); *Stickle*, 1997 WL 767301, at *3-4 (allowing plaintiff to challenge competitor's deceptive actions to promote sale of contaminated animal feed which "would have resulted in carcinogenic material being introduced into the food chain in Europe"). In this case, there is no allegation that defendant's actions had any demonstrable, let alone harmful, effect on consumers. Kraft has not

alleged that there was any risk of harm to consumers based on the fact that the buttermilk product it purchased from SunOpta was not 100% pure buttermilk, nor has it alleged that any product sold to consumers was mislabeled. Kraft has not cited, and the Court has not found, any state or federal decision concluding that "consumer protection concerns" were implicated under circumstances such as those in this case, in which there was no apparent risk of harm to consumers.

The Court agrees with SunOpta that the case law does not support Kraft's position that it has standing under the ICFA in a case like this, and there is no basis for extending the ICFA to reach this case. The Court grants SunOpta's motion to dismiss the ICFA claim. Because any amendment would be futile, the dismissal will be with prejudice.

## CONCLUSION

For the reasons set forth above, the Court grants SunOpta's motion to dismiss [37]. Count II is dismissed without prejudice. Count III is dismissed with prejudice. Status hearing set for October 26, 2016, at 9:30 a.m.

**SO ORDERED.**

**ENTERED:** September 23, 2016

_____
**HON. JORGE L. ALONSO**
**United States District Judge**